Good morning, Your Honors. May it please the Court. John Phelps for appellant. Jacob Howard. Plaintiff needs to allege three things to state a claim under 227b1a3. First, a call to a cell phone. In this case, it was a text call. Two, using an artificial or pre-recorded voice. In this case, it was a video with an audible pre-recorded voice. And three, without prior express consent, which Howard never provided. I just want to make sure I understand exactly what it is you're claiming about the facts. If you open your text app on this and you look at this text, does it play any sound or do you have to touch the link in order to get the sound? Well, to be clear, it's not a link. This is actually a video file that was downloaded to the plaintiff's phone. How is the video file accessed? Does it pop up automatically or do you have to navigate to it? So you will typically receive a text notification, just as when you receive any other text call. And then when you click on that notification, it's going to open up the text message. And with the video there, yes, you do have to push play to commence. You put the video, the image of the video comes up. Correct. And then there's an arrow there. Then you have to push that arrow for the video to play? It may vary depending on the particular phone and the operating system used on the phone. But, yes, there is an action required by the recipient to push play. On some phones, it may show up as an arrow. On other phones, it doesn't. There's no arrow that shows up. You simply touch the video and it starts playing. But, yes, there is an interaction required. It is displayed. With the text message, the video is displayed. That's correct, Your Honor. Then how is it stored? Is it like a temporary cache or is it permanently stored? It's permanently downloaded to the telephone of the recipient. So it's taking up memory on their phone. It's taking up data usage on their phone. And it's also using their bandwidth before they ever do anything to access the audible component of it. But this question of whether there's any interaction required, under Satterfield, there doesn't have to be. Under ringless voicemail cases, there doesn't have to be any interaction. The violation of the TCPA occurs upon sending. So to the extent someone consents to it after the fact, that's not good enough. The violation has already occurred, and the statute specifically requires not just consent, but prior express consent. Does that mean that if someone sends to a friend a text with a video link, they violated the statute? Again, not a video link. This was a video that was sent. So I want to be clear about that. But no. They send a text that has a video that then downloads, but you have to touch it on the text. Is that person — Absolutely not, Your Honor, because there's consent. The FCC has said, and this Court has deferred to that interpretation prior — previously under Chevron and before Loper-Bright, so we still have to honor those prior holdings. But can — and I believe it was Loy — it'll come to me in a minute, but there was a case where the Court specifically — I believe it was Van Patten dealt with consent specifically. So when you give someone your phone number — Counsel, so the theory is if you've provided someone your phone number, you've impliedly consented for them to provide those types of messages to you. More than that. I would say you've expressly consented. So — Even the phone number. Yes. I don't know if that's express consent, but — That's how this Court — that's how this Court has interpreted it in Van Patten. And previously, when Chevron deference was a thing, that was how the FCC had construed it, was that if you had given your phone number, there was consent. So, you know, in our — I mean, Howard stated a prima facie case. The three elements were satisfied, and this Court recognized that those facts violate the TCPA in footnote 4 of TRIM, where this Court stated that text call could come via MMS, include audio sound with an artificial pre-recorded voice, and that's exactly what Howard alleged in the complaint. In that case, however, did the voice activate without any action from the recipient? So that case, there was no voice. That — in TRIM, we were dealing with a text message that was purely text. There was no video included. There was — and this is one of the things that, frankly, I think the RN — the defendants have tried to play hide-the-ball with, because they know what they sent. And it wasn't a link preview. They sent a video. And that's what we alleged. And this Court has to draw those inferences in our favor. This Court can't indulge these inferences in favor of the moving party. Howard alleged in paragraph 25 that an audio file — a video file with pre-recorded voice, an audible pre-recorded voice, was automatically downloaded to his phone. And at that point, the violation of the TCPA is complete. Counsel, can we talk about the residential portion? Absolutely, Your Honor. Would you agree that if the call was for — if the message was for a non-commercial purpose, then that section wouldn't be violated? If it was purely for a non-commercial purpose, I think that that would not have violated The residential. B1B. The residential portion. Correct. To be clear, and I want to be clear about this, because defendants have argued that that's a complete get-out-of-jail-free card for them. Well, let's just explore it for a moment. Okay. You said if it's purely commercial. Purely non-commercial. Purely non-commercial. What do you mean by that? Well, this court previously, and I believe it may have even been a case you were involved in, Your Honor, in Chesbrough v. Best Buy Stores, determined that there can be dual-purpose calls, that a call can be for multiple purposes. So even though we alleged it was for a political purpose, it could also be for fundraising, which would be a commercial purpose. And if that's the case, then if it's a dual-purpose call, we should be — at a minimum, we should be allowed to amend our complaint to allege it's a dual-purpose call. What are you asserting in this? Are you asserting that it was a dual-purpose? We didn't assert one way or the other. We just said that it was to promote their political agenda. But to the — Promotion. Let me ask you this. Promotion of a political agenda, would that be commercial or non-commercial? If they're attempting to raise money, it's commercial, Your Honor. And drawing the inferences in our favor? Absolutely. But to be clear, this exemption that they're claiming refuge under for the residential calls only applies to residential calls. Right. It doesn't apply to a call to a cell phone, even if it happens to be both a cell phone and a residential call. And that — I can get into that if the Court would like, but it has to do with the authorizing authority under B2B, which applies to residential, and B2C, which applies to cellular phones. The FCC has never promulgated any exceptions to B1A3 under the B2C authority, so there can't be any crossover there. One other thing that is critically important that we didn't address in our briefs is that in 2019, Congress amended the TCPA. And in that amendment to the TCPA, they added section — this was a bipartisan amendment, almost unanimously passed, but it ratified Satterfield's holding that text calls are prohibited by 227B. And let me just walk you through that briefly. Basically, the 2019 amendment added section 227I1A, which directs the FCC to establish a process to streamline the information — sharing of information about, and I quote, a call made or a text message sent in violation of subsection B. So Congress recognized that text messages can violate subsection B, and they did that without any limitation, any of this distinction that defendants are claiming about voice calls and text calls. They just said text messages can violate subsection B. Does a person actually hear an artificial or prerecorded voice without taking any responsive action to the text? Again, there does have to be some step taken, but that is not part of — there's no requirement in the statute that — or in the case law that someone — that a — you know, as the district court said, someone has to make a conscious choice because the violation has already occurred. You can't have after-the-fact consent. The statute is clear about that. It must be expressed prior consent. Do we attach any significance to the fact that A refers to any call and B refers to any telephone call? I'm sorry. Where are you in the statute? Sotomayor, I'm at 227B1A and B1B. The operative phrase in B1A is to make any call, and in B it's to make any telephone call. There's an extra word there. Does that make any difference? The — I can — I don't have the authority right here with me, but the FCC — I did come across this in doing some final preparation, and the FCC has recognized this difference and yet has also said that they don't — that they don't attach any significance to it. And I realize that that's no longer, after Loeb or Bright, no longer binding. You know, it's only persuasive authority to the extent that we look at the agency's expertise. But the — but the FCC historically has not seen any distinction between those two, and our position would be that this Court shouldn't either. It's quite striking. I mean, you know, these two provisions are in the same subsection. You'd read them in pari materia, and there's an obvious textual difference, and a telephone call sounds a lot more like something involving voice. Well, but this does involve a voice, Your Honor, and I do want to expand a little bit on the — on 227I1A, because what they did was Congress in I-2 defined a text message as it's set forth in E-8. And E-8C1 specifically says that a text message means a message consisting of text, images, and most importantly, they mention sounds there, which means that it can have an audible, prerecorded voice. And these technologies are — have very much merged since the development — since the enactment of the TCPA. Can I take you back to this issue about prior consent? Yes. Because the exception to B1A is if it's made with the prior express consent of the called party. So how do I have the prior express consent of the called party if I send an acquaintance of mine a text that has a video in it? Because there is a presumption, and this is basically what Van Patten said, was that when you give someone your phone number, you are giving them consent to contact you. That's prior express consent. That reads the words. That is the way it is. Counsel, don't talk over me, please. I'm sorry. I'm sorry, Your Honor. You've done it several times. I'm sorry. You know, it reads the words out of the statute. I mean, prior express consent is equal — just giving a phone number is prior express consent to sending me things that violate this provision? That sounds hard to see. That is what Van Patten held. Van Patten, which we cited in our opening brief and in our reply, Van Patten held that that is prior express consent. When you give someone your phone number, and of course, under Hart v. Massoneri, this court is bound by that panel's precedent. So I don't think we can get around that. I see that I'm down to under a minute. I would just like to say, as far as new technology, Congress shouldn't have to go back to court every time new technology develops to amend the TCPA. The FCC has recognized that. The congressional history recognizes that, that it's supposed to adopt a new technology. I've got under a minute left, so I'd like to save the remainder of my time for rebuttal. Thank you, counsel. We'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, Dallin Holt on behalf of the Republican National Committee, the Starting up where my colleague just left off, I'm going to quote from the D.C. Circuit from a 2018 case, ACA International v. FCC, where it says, it cannot be the case that every unintended communication from a smartphone infringes upon Federal law, and that nearly every American is a TCPA violator in waiting, if not a violator in fact. What's your response? His argument is that we've already read the prior express consent clause broadly enough that that, you know, that parade of horribles is not going to happen. I strongly disagree with that, Your Honor, as does the U.S. Supreme Court. In the recent case of the Facebook case, it was discussing a Ninth Circuit opinion. While we're dealing with an ATDS in that case, an autodialer, the equipment used to send a message, the Court made it very clear that words have meaning and that con — yes, Your Honor. I was going to say, but did it overrule the determination that — about the express consent? Did Facebook address that at all? No, Your Honor. Okay. It was regarding a narrow reading of the rules. I can think of a thousand hypothetical scenarios where someone would not have express consent, even if they had a — Well, but we're talking about what our precedent is, because we're bound to follow our precedent. So if our precedent says it's express consent and it's not overruled by the Supreme Court, then we're bound by that, hypotheticals notwithstanding. I disagree with my colleague's interpretation of what the Ninth Circuit case law is. Can you explain why? Express consent. If I'm giving someone my phone number, I am not expressly consenting to be contacted with an artificial or pre-recorded voice. Right, but if our case authority says differently, how can we deviate from that? I don't — What case are you relying upon? I'm relying upon the text of the statute, Your Honor. But if we interpret the text of the statute that way, then you're bound by that and we're bound by that, correct? Of course. That's what the case law says. But the case law does not say, even me giving a phone number to a friend, a colleague or a co-worker is implied or express consent to be contacted with an artificial or pre-recorded voice. That is nowhere in Ninth Circuit case law, Your Honor.  And what is important is to look at the actual text of 227 and the associated regulatory scheme, analyze the plain language and plain meaning of the words, and view them in the context, and ask ourselves, does plaintiff's interpretation make sense based upon the plain meaning of the words? Every case, every court, including the Ninth Circuit, that has analyzed whether or not a text message can constitute an artificial or pre-recorded voice has found that the plain meaning of the word, of words in 227 and the supporting regulatory scheme, does not include text message within the meaning of artificial or pre-recorded voice. There is not a single case that my colleague can cite to here that finds that a text message can be an artificial or pre-recorded voice. You concede that a voicemail is covered by the statute? I do, Your Honor. That is initiated with a voice call. But what is the difference between an unanswered call that then implants a voicemail message in the voicemail section of the cell phone, and what he's alleging here, which is a text message that implants a video pre-recorded in a section of the cell phone? What's the difference between those two? The difference is what Your Honor just said. We have a video. They're in different locations of the phone, but what's the difference? You're transmitting a pre-recorded stored message and planning it on the phone. In one instance, you're referring to a video. I'm not sending a voice. Suppose it's an audio. It's an audio file attached to the text message, and it, you know, it downloads it onto the phone. You have to go retrieve it the way you have to retrieve the voicemail. But what's the difference between those two, and how is that tied up to the statutory language? Again, Your Honor, if I may answer your question by going through some of the statutory text, and I think it'll help us understand that a little better. Well, one answer might be Congress just hasn't acted yet. It has acted on the voice component, but has not acted on the text component, and that's its choice. Absolutely, Your Honor. As Mr. Phelps said, in 2019, the TCPA was amended, and many, many times before that, between 1991, when it was enacted, and today. Every few years, Congress has amended the TCPA, and in many of those amendments, they have added explicit words of text messages to different sections to make it abundantly clear that certain provisions of the TCPA apply to voice calls and to text messages. If you invite the Court to simply open up to 227 and search, find, and just type text message, and you will find dozens of references that explicitly differentiate between a voice call and a text call. Yes, there is a, lack of a better word, a legal fiction that we're not disputing here today, that a text is a call for purposes of the TCPA, despite the fact that there's no express language in the TCPA that says that. However, to take it a step further and to say that a text is an artificial or prerecorded voice call, we're already out on a limb, in my opinion, with arguing that a text is a call for purposes, for some purposes of the TCPA. To take it a step further completely departs from the plain, ordinary meaning of the text. Ginsburg. Counsel, in your view, would a friend leaving a text message on the phone be included in this statute? An artificial prerecorded voice claim of the statute, Your Honor? Right. No. The hypothetical was if a friend left a text message with a video, would that be covered under this statute? I don't believe so. If you apply a counsel's understanding of it, yes, that that would be the outcome. I do not believe a text message with a video. But normally if someone calls you, do they use an artificial voice, a prerecorded artificial or prerecorded voice? If the text, if the friend did not use an artificial or prerecorded voice, would that be covered under the statute? Absolutely not, Your Honor. Okay. It's important, I think, to understand in 1991 when this was enacted, text messaging did not exist. It was not part of our vocabulary. Right. But we've since ruled that text messages are covered. Yes, Your Honor. And we're not disputing that here today. It is simply an atextual common law creation that has deferred to the FCC's guidance over the years on that matter. But if you look at the Facebook opinion, Justice Sotomayor goes through pages of the reasons why the TCPA was enacted. And one of the primary reasons we have this artificial or prerecorded voice prohibition, the technology at the time would allow someone to get an auto dialer and I could say, okay, on that city block, I'm going to program this to call every single number sequentially, and I'm going to have it leave a message. If someone answers, it'll play a message. If it goes to a voicemail, it will play a message. I don't have to have anyone there manning this. And what was happening is you would have hospitals, police stations, city government buildings, entire phone lines of a city block were getting tied up. It was a public safety concern. Right. Counsel, my concern here is to decide whether or not the communication that was made to the plaintiff fit within the definition of the statute. And so you're going through the purpose of the statute to me isn't helpful to me in terms of under the wording of the statute, did this communication fit within the provisions of the statute? Tell me why it did not fit within the language of the statute. Yes, Your Honor. And I'm not talking about the residential part. I'm talking about the wireless part. Yes, Your Honor. In opening up the plain language of 227. B-1. 227b-1. Yes, the wireless provision. Artificial prerecorded voice call is somewhat defined in the TCPA. Do you agree or disagree that the call that was made to the plaintiff, if we accept the fact that the image was part of it, used an artificial or prerecorded voice? No, I do not. Not under the meaning of the statute, Your Honor. Well, why? Why not? Whether or not something constitutes an artificial or prerecorded voice, I would direct the Court to D-3, which discusses technical and procedural standards. Was it a live voice? Was it a live, live voice? No, Your Honor. So if it wasn't a live voice, why wasn't it prerecorded? It was prerecorded in the sense that it was when they filmed the movie. When they filmed the clip, it captured audio and a visual component and mirrored them together. However, the statute is clear on what they view as an artificial or prerecorded voice, and it has to be sent with an artificial or prerecorded voice system. It is the equipment that is outlined here. And it says the commission, and I'm on — Are you still in the wording of the statute? Yes. D-3, if you continue towards the middle to the end of the statute, under a section entitled technical and procedural standards, it says this. The commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message. That's just the transmission system. That's not defining what is an artificial or prerecorded voice. Well, it's defining the equipment that is used to send it. Exactly. Exactly. And the equipment that Plaintiff alleges was sent, the text in question, was another cell phone or was another computer equipment. It was not an artificial or prerecorded voice system. And as you look through this, I'm looking at subsection B of that. It says any such system, meaning an artificial or prerecorded voice system, will automatically release the called party's line within five seconds of the time the notification is transmitted and that the called party has hung up to allow the called party's line to be used to make or receive other calls. Counsel, can all of these gradations be made on a motion to dismiss? All these issues, can they be resolved on a motion to dismiss? What equipment was used and how it was sent. Is that appropriate for a motion to dismiss? We're not discussing equipment here. I thought you said the systems that were used dictate whether or not it's a recorded or prerecorded or artificial voice. But on a motion to dismiss, how would we get to that? The district court's dismissal relied, it was kind of a belt and suspenders approach. The first approach was the unambiguous plain meaning of the text, artificial or prerecorded voice does not include a text message with a video. A hard stop. And to do that, you have to look at the text as a whole, not just the one section of it. What are the requirements the TCPA and the FCC have placed on me if I'm going to make or place an artificial or prerecorded voice call? Here, it clearly implies that a party has to answer and hang up, free up the line so that other calls can be made. This clearly implies a telephone call is taking place. None of this language makes sense in the context that I'm dealing with a text message that doesn't occupy the called party's line at all. And I see my time is quickly leaving here, Your Honor. I just, I wanted to focus lastly on the statutory scheme, the regulatory scheme. And 47 CFR 1200 here. And this is where the exemptions have been codified. It is where there's additional regulations surrounding requirements, surrounding the use of artificial or prerecorded voice. I'm looking at subsection F, subsection 9F, where you're hearing voice calls and text messages, voice calls and text messages over and over and over again throughout this section. It talks about artificial prerecorded voice calls. You must terminate the call as soon as the person requests to be removed from the list. And it requires that you either, within two seconds of identifying yourself on the call, you either have to provide a button dial mechanism for someone to opt out. You can't do that on a text message, Your Honor. And I see my time is up. Right, but we've already said that a text message is covered. But I just wanted to ask you, in B1A, it prohibits making any call other than those made with express consent or emergency purpose using any automatic telephone dialing system or an artificial or prerecorded voice. So it's either or. It doesn't have to be an automated system if it's an artificial or prerecorded voice. Do you agree? I do, Your Honor. Okay. With the distinction there is a voice call and a text call. Got it. And you need to recognize which one applies to which. I understand your argument. Any questions? All right. Rebuttal. Counsel. I looked at the case that you recited. Were you reciting the La Jolla case? Is that the case you're reciting? It was actually, I believe, for the consent. I believe it was Van Patten, Your Honor. Well, I thought you said La Jolla. I did say La Jolla. I misspoke. La Jolla dealt with a report. I read that one, and it doesn't say what you said. Correct. La Jolla, I believe, deals with what appears to be a ringless voicemail, although it wasn't specifically identified as such.  While you're talking, I'm going to look up. A couple of things I want to go through really quickly with the Court. Counsel. Oh, I'm sorry, Your Honor. I'm going to ask you a question about Van Patten, which is, did Van Patten address express consent in the context of consenting to receive prerecorded messages? I mean, because if I give my cell phone number to someone, does that mean I consent to robocalls? Effectively, that's what the case law says. You know, my recollection of the facts in Van Patten were that he was receiving text messages through an auto dialer. So, no, it wasn't a prerecorded voice text. This is actually a matter of first impression in the nation. There have been cases brought, and this is why we can't cite to anything other than the possibility of a MMS text message that contains an artificial or prerecorded voice. But you see the dilemma that I'm getting at, which is, unless we read express prior consent to robocalls to mean anyone who gives out their cell phone has consented to robocalls, unless we put that limitation in, your reading of the statute just has sweeping concerns about everyone who's sending to anyone any kind of a link that would download a video. And that's a concern. So it's kind of a skill in charybdis. Either the statute is just wildly overbroad, or in order to save it from overbreath, we read the consent in a way that really undercuts the statutory purpose of avoiding robocalls. So a few things I would say to that, Your Honor. One is, if it's overbroad, that's not for this Court to fix. That's for Congress to fix. That's Sedema. That's Rucho v. Common Cause. But it may be a suggestion your reading is wrong if it leads to such a reading that seems counter to Congress's purposes. Well, based on the case law as it's developed, and I guess since we don't have a prerecorded voice video that could be sent to you, if you gave someone your telephone number, if you gave a business your telephone number, they absolutely can, you've now given them consent to contact you with a ringless voicemail, with a prerecorded voice call. Counsel? I'm sorry, Your Honor. In Van Patten, that language was based on an FCC ruling. So now that Chevron deference no longer applies, can we decide that differently? Not according to Loper-Bright. Loper-Bright says we have to respect everything that was decided. It said stare decisis. It says we have to respect whatever was decided under Chevron deference. I know, but it says we apply statutory stare decisis, and I look at Van Patten and it doesn't address robocalls. I'm sorry? It doesn't address a robocall with a prerecorded voice. It addresses just the autodialer, and it's to his own gym that he joined. But what's the distinction in the statute between a call made with an autodialer and a call made with a prerecorded voice? They can, in fact, as some cases have shown, include both. But it's the express consent language that I'm talking about. But there's no difference in the express consent language related to an ATDS call or a, at least not that I've seen, between an ATDS call and a... But Van Patten was limited to the context of a one-on-one relationship. The gym, the person who was applying for gym membership gave the gym his number. Correct. And so that was consent for the gym to call the person. Correct. So, but that doesn't mean that in all contexts providing a phone number is consent for all purposes. Is it? Why would it not be? There's no distinction in the statute, and there was no distinction in the case that said... My point is we're not bound by this case because it has specific facts that we are not dealing with here. Hart v. Massoneri, we're bound by this case. And I don't see and to the extent that there's a distinction between, there's no distinction in the statute for, between prior express consent for an ATDS call or a prerecorded voice call. There simply isn't anything in the statute that says that. And to the extent the Court would... But there's no definition of express consent in the statute either. No, there's just the case law. So we are interpreting express consent, and the statute does not do that. And so we, I am of the view that we can determine whether or not this definition, this FC, the reliance on the FCC definition in here, now the Chevron deference no longer applies, stands. Well, it's entitled to stare decisis. This panel can't overrule a prior panel. Van Patten itself acknowledged that the actual communication at issue in Van Patten now would not be covered by prior express consent under the then-new FCC rules which imposed for commercial advertisements and the like a prior written express requirement, but said that this communication was prior to that and therefore exempted. So even Van Patten acknowledges it wasn't valid on its own facts going forward. Prior written express consent applies to the do not call list. And not to, not, it does not apply to A1, I'm sorry, B1A3. It does not, that does not require prior express written consent. It merely requires prior express consent, which is what Van Patten dealt with. FCC orders that took effect after the text messages at issue in this case further explain the FCC's interpretation of prior express consent. In 2012, the FCC imposed further restrictions on telemarketing calls and required prior express written consent for texts and calls that include or introduce an advertisement or constitute telemarketing. Because the alleged conduct here took place before the rule took effect on October 16, 2013, defendants need not have obtained prior express written consent from Van Patten. Telemarketing. Doesn't that say that it's no longer operative even on its own facts going forward? No, Your Honor, because the prior express written consent applies to, we're not talking about when we're talking about, we just still have to have prior express consent unless it is a commercial advertisement, unless, and the other, I'm sorry, the other two or three things that the Court mentioned there. And those actually, an advertisement, those actually fall within the do not call prohibition, not the B1A3 prohibition. Counsel, is there a consent issue in this case? Absolutely. He never consented. Mr. Howard never provided his phone number. Did the defendant say that there was consent? No. They've never claimed there was consent, so I guess no. At this stage of the proceedings, Your Honor, that's absolutely correct. There is no consent issue because we allege that he did not consent and defendants can't argue otherwise. He's been a lot of times talking about an issue that's not an issue. Do you have anything to sum up? Facebook, the Facebook case that was talked about in footnote 8 specifically says artificial prerecorded voice is banned irrespective of the type of technology used. To this distinction quickly between text calls and voice calls, E8D of the statute recognizes that a text messaging service is a service provided as part of or in connection with a voice service, so they're not. We understand your argument. Okay. We've taken you way over your time. I understand. Thank you, Your Honor. All right. Thank you to both counsel for your helpful arguments. The case just argued is submitted. Judge Fitzwater, do you have any questions? I'm sorry. We didn't get to them. It was an answer. Oh, okay. All right. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the Court.
judges: RAWLINSON, COLLINS, Fitzwater